**STATE v. HATFIELD**

[225 N.C. App. 765 (2013)]

STATE OF NORTH CAROLINA
v.
NATHANIEL KENJIVO HATFIELD

No. COA 12-961

Filed 5 March 2013

**1. Appeal and Error—jury request to review testimony—no objection at trial—plain error review**

Defendant's argument regarding the jury's request to review certain testimony was reviewable for plain error even though defendant did not object at trial.

**2. Criminal Law—jury request to review testimony—failure to exercise discretion**

The trial court erred in a prosecution arising from an assault on defendant's wife by failing to exercise its discretion as required by N.C. Gen. Stat. § 15A-1233(a) when the jury asked to review the testimony of the wife. Even if no written transcript was available, the trial court still had the discretion to allow the jury to rehear the testimony.

**3. Criminal Law—jury request to review instructions—failure to exercise discretion—prejudicial**

The trial court's failure to exercise its discretion in response to a jury request to review testimony in a prosecution of an assault on defendant's wife was prejudicial.

Appeal by defendant from judgment entered 6 April 2011 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 10 December 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly A. D'Arruda, for the State.*

*Irving Joyner for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Nathaniel Kenjivo Hatfield ("Defendant") appeals from a judgment entered after a jury convicted him of: (i) two counts of assault by pointing a gun (N.C. Gen. Stat. § 14-34 (2011)) and (ii) one count of assault on a female (N.C. Gen. Stat. § 14-33(c)(2) (2011)). The trial court sentenced Defendant as a level II offender to: (i) a 75-day active

sentence for assault on a female; and (ii) a 75-day suspended sentence with two years of supervised probation for the two assault by pointing a gun convictions. On appeal, Defendant contends the trial court erred by: (i) admitting testimony from Defendant's wife about Defendant's alleged threats to co-workers; (ii) admitting testimony from a police officer concerning whether Defendant was the aggressor; (iii) admitting testimony from Defendant's wife about the presence of unrelated martial arts weapons in Defendant's home; and (iv) refusing to exercise its discretion in considering the jury's request for a copy of Defendant's wife's testimony. Upon review, we vacate and remand for a new trial.

## I. Facts & Procedural History

Defendant faced trial during the 4 April 2011 Criminal Session of Wake County Superior Court for: (i) two counts of assault by pointing a gun and (ii) one count of assault on a female. The State's evidence at trial tended to show the following facts.

On the night of 28 February 2010, Defendant and his wife, Elizabeth Hatfield ("Elizabeth"), argued in their living room over whether to allow their children to watch a particular movie. After Elizabeth's four-week-old baby son fell sleep in her arms around 11:00 P.M, she took the baby upstairs to his crib. Elizabeth and Defendant then went to their bedroom to sleep.

When they got into the bedroom, Elizabeth began putting pillow cases on the pillows. Defendant insisted he help, but Elizabeth said it was a one-person job. She suggested he eat and take his medication before bed. Defendant became angry with Elizabeth and told her to "shut the hell up." He then grabbed Elizabeth by the ears and shook her head, causing Elizabeth's glasses to fall. When Defendant released her, he turned and punched a three-inch hole in the wall.

At that point, the baby had awakened. Elizabeth went into the baby's bedroom to soothe him back to sleep. Defendant followed Elizabeth into the baby's bedroom. He continued to yell at her and punched the baby's bedroom wall, leaving a dent. He also shook the baby's crib so violently Elizabeth thought it would break. Defendant then pulled out a black semi-automatic Beretta 9MM pistol, showed Elizabeth a bullet, and asked her if she thought the gun and the bullet were real. When she responded affirmatively, Defendant loaded the bullet into the gun's magazine. Defendant then alternated between pointing the gun at Elizabeth's head and the baby's head.

During this display, Defendant said he wanted to leave Elizabeth and that he would rather see their children in heaven than with her.

Defendant then grabbed Elizabeth by the throat and threw her on the bed. Defendant pinned down Elizabeth's arms and legs so she could not move. When he finally got up, Elizabeth immediately called 911. The police arrived at 1:00 A.M. on 1 March 2010. Officer Lindsay Wygonik ("Officer Wygonik"), the first officer to arrive, investigated the scene and questioned both Defendant and Elizabeth. She then arrested Defendant for three offenses: (i) assault by pointing a gun at Elizabeth; (ii) assault by pointing a gun at the baby; and (iii) assault on a female for pinning Elizabeth down and shaking her head.

Defendant's trial occurred during the 4 April 2011 Criminal Session of Wake County Superior Court. The State called Elizabeth and Officer Wygonik to testify. In addition to the facts discussed previously, Elizabeth testified Defendant had said "some pretty nasty things" about co-workers at IBM and that IBM "ended up filing a restraining order against him." Additionally, Elizabeth testified Defendant kept numerous martial arts weapons in their home.

Officer Wygonik then testified. On direct examination, the State asked Officer Wygonik why she charged Defendant with the three crimes. She replied that "Mr. Hatfield was the primary aggressor in the situation, and with what Mr. Hatfield told me in relation to the guns, in my four years of experience, [it is] very unusual for anyone to handle a firearm during an argument for any reason." Defendant did not object to this testimony.

Defendant then took the stand and denied ever grabbing his wife, punching the walls, or pointing a gun at his wife or child. At the close of all the evidence, the trial court instructed the jury and sent it to deliberate. During deliberation, the jury asked to "hear a reading of Elizabeth's sworn testimony." In response, the trial judge told the jury:

> We can't do that because we haven't done daily copy and so you have to rely on your best recollection among the 12 of you of what it was. To do daily copy is quite expensive and so you may have seen that on TV, but that's not how we do it.

The jury was then sent back to resume its deliberations.

On 6 April 2011, the jury returned a verdict finding Defendant guilty of all three charges. Defendant was sentenced to: (i) an active

sentence of 75 days imprisonment for assault on a female and (ii) a suspended sentence of 75 days with supervised probation for two years for the two convictions for assault by pointing a gun. On 14 April 2011, Defendant filed timely notice of appeal.

## II. Jurisdiction & Standard of Review

This Court has jurisdiction to hear the instant case pursuant to N.C. Gen. Stat. § 7A-27(b) (2011) and § 15A-1444(a) (2011) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

Defendant's arguments regarding (i) the admission of Elizabeth's testimony about his threats to IBM; (ii) the admission of Elizabeth's testimony about other martial arts weapons in the house; and (iii) the admission of Officer Wygonik's testimony that Defendant was the first aggressor were not preserved at trial and thus are only reviewable for plain error. *See* N.C. R. App. P. 10(a)(4) ("[A]n issue that was not preserved by objection . . . at trial and . . . not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007) (holding that the defendant's argument was waived when he failed to "specifically and distinctly" assign plain error to a trial court's ruling); *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) (holding that courts will only "review . . . unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence.").

Plain error arises when an error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotation marks and citation omitted). To prevail under plain error review, a "defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

[1] Defendant's argument regarding the jury's request for Elizabeth's testimony is reviewable even though Defendant did not object at trial. *See* N.C. Gen. Stat. § 15A-1233(a) (2011); *State v. Starr*, 365 N.C. 314, 317, 718 S.E.2d 362, 365 (2011) (holding that the "alleged error is preserved by law even when the defendant fails to object"); *State v. Ashe*, 314 N.C. 28, 40, 331 S.E.2d 652, 659 (1985) ("[F]ailure of the trial

court to comply with [this] statutory [mandate] entitles [D]efendant to press [this] point[] on appeal, notwithstanding a failure to object at trial."). Still, Defendant must "demonstrate that there is a reasonable possibility that a different result would have been reached had the trial court's error not occurred." *State v. Nobles*, 350 N.C. 483, 506, 515 S.E.2d 885, 899 (1999).

## III. Analysis

On appeal, Defendant argues the trial court erred by: (i) admitting Elizabeth's testimony about Defendant's alleged threats to co-workers; (ii) admitting Officer Wygonik's testimony that Defendant was the aggressor; (iii) admitting Elizabeth's testimony about the presence of unrelated martial arts weapons found in Defendant's home; and (iv) failing to exercise its discretion when the jury asked to review Elizabeth's testimony. Because we vacate the trial court's judgment and remand for new trial based on Defendant's fourth argument, we address that issue first.

N.C. Gen. Stat. § 15A-1233(a) provides:

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested. .

N.C. Gen. Stat. § 15A-1233(a) (2011). Therefore, the statute:

> imposes two duties upon the trial court when it receives a request from the jury to review evidence. First, the court must conduct all jurors to the courtroom. Second, the trial court must exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury.

*Ashe*, 314 N.C. at 34, 331 S.E.2d at 656. In sum, the "issue is whether the trial court exercised its discretion as required by [the statute]." *State v. Barrow*, 350 N.C. 640, 646, 517 S.E.2d 374, 378 (1999) (citations omitted).

STATE v. HATFIELD

[225 N.C. App. 765 (2013)]

The test to determine whether a defendant should receive a new trial due to the trial court's failure to exercise discretion has two parts. First, we "must consider if the trial court failed to exercise its discretion. If the trial court did indeed fail to exercise its discretion, this would constitute error." *State v. Long*, 196 N.C. App. 22, 28, 674 S.E.2d 696, 700 (2009) (internal citation omitted). Our Supreme Court has held that "[w]hen the trial court gives no reason for a ruling that must be discretionary," the reviewing court will presume "that the court exercised its discretion." *Starr*, 365 N.C. at 318, 718 S.E.2d at 365. But, "where the statements of the trial court show that the trial court did not exercise discretion," the "presumption is overcome, and the denial is deemed erroneous." *Id.* (quotation marks omitted and citation omitted).

Second, we must "consider whether this error was prejudicial." *Long*, 196 N.C. App. at 28, 674 S.E.2d at 700. The error is prejudicial if the testimony was "material to the determination of [the] defendant's guilt or innocence." *State v. Johnson*, 346 N.C. 119, 126, 484 S.E.2d 372, 377 (1997) (quotation marks and citation omitted). Testimony is material if "the defendant can show that (1) such testimony or evidence involved issues of some confusion and contradiction, and (2) it is likely that a jury would want to review such testimony." *State v. Johnson*, 164 N.C. App. 1, 20, 595 S.E.2d 176, 187 (2004) (quotation marks and citation omitted). If the defendant satisfies this requirement, we will determine the error was prejudicial because there exists "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2011).

In the present case, Defendant argues: (i) the trial court failed to exercise its discretion regarding the jury's request to review Elizabeth's testimony, and (ii) this error was prejudicial. We agree.

## A. Failure to Exercise Discretion

[2] Here, the trial court failed to exercise its discretion in considering the jury's request.

A similar situation was addressed by our Supreme Court in *Barrow*, 350 N.C. 640, 517 S.E.2d 374. In *Barrow*, the defendant was convicted of first-degree murder. *Id.* at 641, 517 S.E.2d at 375. On appeal, he contended the trial court erred by "failing to affirmatively exercise its discretion" under section 15A-1233(a) when responding to the jury's request to review testimony. *Id.* at 645, 517 S.E.2d at 377.

There, the trial court said it "doesn't have the ability to now present to you the transcription of what was said during the course of the trial." *Id.* at 647, 517 S.E.2d at 378.

In *Barrow*, our Supreme Court held the statement "suggests a failure to exercise discretion" and the "response could be interpreted as a statement that the trial court did not believe that it had the discretion to consider the jury's request." *Id.* The *Barrow* court distinguished that case from others where the trial court had actually exercised its discretion to refuse the jury's request. *See id.* at 647-48, 517 S.E.2d at 379 ("[T]he trial court stated that it did not have the *ability* to present the transcript to the jury, indicating a failure to exercise discretion."); *Ashe*, 314 N.C. at 35, 331 S.E.2d at 656 (holding that it was error for the trial court to respond to the jury's request simply by saying "[t]here is no transcript at this point."); *State v. Lang*, 301 N.C. 508, 511, 272 S.E.2d 123, 125 (1980) (holding that the trial court's "comment to the jury that the transcript was *not available* to them was an indication that he did not exercise his discretion" and that such "denial of the jury's request as a matter of law was error.").

The instant case is closely analogous to *Barrow*, *Ashe* and *Lang*. Here, after the jury requested Elizabeth's testimony, the trial court simply told the jury "[w]e can't do that." Like in *Barrow*, *Ashe* and *Lang*, this statement suggests the trial court did not have discretion to grant the jury's request. However, even if no written transcript was available, the trial court still had the discretion to allow the jury to rehear the testimony. *See, e.g., Ashe*, 314 N.C. at 35 n.6, 331 S.E.2d at 657 n.6 ("The existence of a transcript is . . . not a prerequisite to permitting review of testimony. The usual method . . . is to let the court reporter read to the jury his or her notes under the supervision of the trial court . . . .").

Consequently, we hold the trial court erred by failing to exercise its discretion as required by N.C. Gen. Stat. § 15A-1233(a). Although we do not decide whether the trial court should have granted the jury's request, the trial court must clearly exercise its discretion. *See Starr*, 365 N.C. at 319, 718 S.E.2d at 366 (holding that although the "trial court is not required to state a reason for denying access to the transcript," it must at least say " 'In the exercise of my discretion, I deny the request,' and instruct the jury to rely on its recollection of the trial testimony."(citation omitted)).

STATE v. HATFIELD

[225 N.C. App. 765 (2013)]

## B. Prejudicial Error

**[3]** Having concluded the trial court erred, we now consider whether this error was prejudicial. *See Long*, 196 N.C. App. at 28, 674 S.E.2d at 700 (citation omitted).

Error is prejudicial if it involves testimony that is "material to the determination of [the] defendant's guilt or innocence." *Starr*, 365 N.C. at 319, 718 S.E.2d at 366 (quotation marks and citation omitted); *see also Johnson*, 346 N.C. at 126, 484 S.E.2d at 377; *Ashe*, 314 N.C. at 38, 331 S.E.2d at 658; *Lang*, 301 N.C. at 511, 272 S.E.2d at 125; *State v. Hanible*, 94 N.C. App. 204, 206, 379 S.E.2d 696, 698 (1989); *State v. Helms*, 93 N.C. App. 394, 401, 378 S.E.2d 237, 241 (1989). Testimony is material if "the defendant can show that (1) such testimony or evidence involved issues of some confusion and contradiction, and (2) it is likely that a jury would want to review such testimony." *Johnson*, 164 N.C. App. at 20, 595 S.E.2d at 187 (quotation marks and citation omitted). *See also Starr*, 365 N.C. at 319, 718 S.E.2d at 366 (holding that error is prejudicial if the defendant shows " 'a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises' " (citation omitted)). Our Supreme Court has previously held that a jury is likely to want to review testimony that is "the only evidence directly linking defendant to the alleged crimes." *Johnson*, 346 N.C. at 126, 484 S.E.2d at 377.

Here, Defendant directly contradicted Elizabeth's testimony at trial. Specifically, Defendant testified he never grabbed his wife, punched the walls, or pointed a gun at his wife and baby. Therefore, Elizabeth's testimony satisfies the first prong of the *Johnson* test. *See Long*, 196 N.C. App. at 40–41, 674 S.E.2d at 707 (holding that when testimony of a victim and a defendant was "contradicting," the trial court committed prejudicial error by refusing the jury's request to review the testimony).

Furthermore, it is likely the jury would have wanted to review Elizabeth's testimony because Elizabeth was the only eyewitness to Defendant's alleged crimes. *See, e.g., Johnson*, 346 N.C. at 126, 484 S.E.2d at 377 (holding the requested evidence was "clearly material to the determination of [the] defendant's guilt or innocence" because it "was the only evidence directly linking defendant to the alleged crimes") (quotation marks and citation omitted); *Lang*, 301 N.C. at 511, 272 S.E.2d at 125 (holding that testimony from an alibi witness was material when the defendant's only defense was his alibi). Thus,

Elizabeth's testimony was material to the determination of Defendant's guilt or innocence because it was the "only evidence directly linking [D]efendant to the alleged crimes." *See Johnson*, 346 N.C. at 126, 484 S.E.2d at 377.

Therefore, we hold the trial court's failure to exercise its discretion under N.C. Gen. Stat. § 15A-1233(a) was prejudicial. First, Defendant directly contradicted Elizabeth's testimony at trial. Second, Elizabeth was the only eyewitness to his alleged crimes. Consequently, we vacate the trial court's judgment and remand for new trial. As we vacate and remand based on Defendant's fourth argument, we need not address his other arguments. *See Long*, 196 N.C. App. at 41, 674 S.E.2d at 707 ("As we are granting defendant's request for a new trial, and the other issues he has raised may not be repeated in a new trial, we will not address his other assignments of error.").

## IV. Conclusion

We conclude the trial court erred by failing to exercise its discretion in responding to the jury's request for Elizabeth's testimony. Moreover, this error was prejudicial because the testimony was material to the determination of Defendant's guilt or innocence. Therefore, we vacate the trial court's judgment and remand for new trial.

NEW TRIAL.

Chief Judge MARTIN and Judge ERVIN concur.