IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-462

Filed: 17 March 2020

Gaston County, No. 18 CRS 50863

STATE OF NORTH CAROLINA

    v.

VICTOR MANUEL MEDINA NOVA

Appeal by defendant from judgment entered 25 October 2018 by Judge Athena Fox Brooks in Gaston County Superior Court. Heard in the Court of Appeals 14 November 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Brittany Edwards, for the State.*

*Joseph P. Lattimore for defendant.*

DIETZ, Judge.

It is fairly common for jurors, during deliberations, to ask for a transcript of witness testimony. It happened in this criminal case. The trial court responded as follows: "This is one of those things unlike on TV those are not real-time, those are not made as they are testifying. It would take us a couple of weeks at the fastest to make those. So that's just not able to be done."

Were this a case of first impression, we would hold that the trial court's statement was an appropriate exercise of the court's discretion. But this is not a new

issue. In a series of indistinguishable cases, our State's appellate courts have held that trial court statements like the one quoted above, denying jury requests for transcripts because there is no "real-time" transcript, is error. This is so, these courts reasoned, because it is unclear whether the trial court understood it had discretion to grant the jury's request and wait for the transcript to be prepared.

We are constrained to follow this controlling precedent here and so we must vacate the judgment and remand for a new trial. But we believe the Supreme Court should review this line of cases. Precedent aside, it readily can be inferred from the trial court's statement that the court understood it had discretion to order a transcript but chose not to do so because it was impractical given the length of time necessary to prepare one.

**Facts and Procedural History**

A grand jury indicted Defendant Victor Manuel Medina Nova for taking indecent liberties with a child. The case went to trial. The alleged juvenile victim testified at the trial, as did Nova.

During deliberations, the jury sent notes to the trial court asking, "can we read transcript of defendant's testimony" and "can we see [the juvenile's] transcript from his testimony." Outside the presence of the jury, the trial court first informed the parties that "we do not have real-time transcripts, so they will be directed to remember their own memory of the testimony." The trial court then brought the jury

into the courtroom and instructed them that "[t]his is one of those things unlike on TV those are not real-time, those are not made as they are testifying. It would take us a couple of weeks at the fastest to make those. So that's just not able to be done. You should rely upon your memory of what the testimony was."

The jury convicted Nova of taking indecent liberties with a child. The trial court sentenced Nova to 15 to 27 months in prison and 30 years of sex offender registration. Nova appealed.

## Analysis

Nova argues that the trial court committed reversible error because it "failed to exercise the discretion required by statute" in denying the jury's request for a transcript of trial testimony.

Although, for practical reasons, courts rarely order a transcript of trial testimony during jury deliberations, the law permits them to do so. If "the jury after retiring for deliberation requests a review of certain testimony" in a criminal case, the trial court "may direct that requested parts of the testimony be read to the jury." N.C. Gen. Stat. § 15A-1233(a).

Importantly, the statute expressly provides that the decision of whether to read portions of the trial transcript to the jury is one left to the trial court's "discretion." *Id.* This statutory mandate had led our State's appellate courts to vacate many criminal convictions on the ground that the "trial court's statement that it is

*unable* to provide the transcript to the jury demonstrates the court's apparent belief that it lacks the discretion to comply with the request." *State v. Starr*, 365 N.C. 314, 318, 718 S.E.2d 362, 365 (2011) (emphasis added). This is so, our appellate courts explained, even if the trial court also stated the *reason* the court was unable to provide the transcript—typically a concern that it would take too long to prepare one.

For example, in *State v. Lang*, after the jury requested a transcript of testimony, the trial court responded that "the transcript is not available to the jury." 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980). The Supreme Court held that the trial judge's "comment to the jury that the transcript was not available to them was an indication that he did not exercise his discretion to decide whether the transcript should have been available under the facts of this case. The denial of the jury's request as a matter of law was error." *Id*. at 511, 272 S.E.2d at 125.

Later, in *State v. Ashe*, the jury asked the trial court for a transcript of certain trial testimony. 314 N.C. 28, 33, 331 S.E.2d 652, 656 (1985). The court responded by stating "[t]here is no transcript at this point. You and the other jurors will have to take your recollection of the evidence." *Id*. at 35, 331 S.E.2d at 656–57. The Supreme Court again held that the trial court erred by failing to exercise its discretion because the trial judge's remark that "there is no transcript at this point" indicated that "the trial judge apparently felt that he could not grant the request." *Id.*

Finally, in *State v. Starr*, the trial court responded to a request for a transcript of witness testimony using language nearly identical to the language at issue here: "In North Carolina we *don't have the capability of realtime transcripts* so we cannot provide you with that. You are to rely on your recollection of the evidence that you have heard in your deliberations." 365 N.C. at 317, 718 S.E.2d at 365 (emphasis in original). The Supreme Court held that this was error because the "trial court's statement 'we don't have the capability . . . so we cannot provide you with that' overcomes the presumption the court exercised its discretion." *Id.* at 318, 718 S.E.2d at 365. The Court emphasized that "[a] trial court's statement that it is *unable* to provide the transcript to the jury demonstrates the court's apparent belief that it lacks the discretion to comply with the request." *Id.* (emphasis in original).

This Court, relying on *Starr*, *Ashe*, and *Lang*, similarly has found error in a trial court statement identical to the one at issue here. In *State v. Chapman*, the trial court responded to a jury's request for a transcript of a witness's testimony with the following: "Transcripts aren't automatically generated. That's something that takes several weeks sometimes for a court reporter to do. We can't provide that for you because it is not available at this time." 244 N.C. App. 699, 707, 781 S.E.2d 320, 326 (2016). We held that the trial court's "explanation that it was refusing the jury's request because a transcript was not currently available is indistinguishable from

similar responses to jury requests that have been found by our Supreme Court to demonstrate a failure to exercise discretion." *Id.* at 707–08, 781 S.E.2d at 326.

The trial court's statement in this case is substantively identical to those in *Starr* and *Chapman.* Here, the trial court said: "This is one of those things unlike on TV those are not real-time, those are not made as they are testifying. It would take us a couple of weeks at the fastest to make those. So that's just not able to be done." Under *Lang*, *Ashe*, *Starr*, and *Chapman*, we are constrained to hold that the trial court erred.

We note that there is some logical tension in these decisions. When a trial court observes, as was the case here, that it "takes us a couple of weeks at the fastest" to prepare a transcript of witness testimony and thus it is "just not able to be done," this necessarily implies that the trial court understands it has discretion to order a transcript and to then "direct that requested parts of the testimony be read to the jury." N.C. Gen. Stat. § 15A-1233(a). After all, if the court thought it did not have the discretion to order a transcript and have excerpts read to the jury, what difference would it make how long it would take to prepare that transcript? What this language instead implies is that the trial court understands its discretionary authority but is unwilling to delay deliberations for several weeks while waiting for a transcript to be prepared.

As an intermediate appellate court, we can do nothing more than observe this

tension. We are bound by both our own precedent and the Supreme Court's, and thus are constrained to find error. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). We therefore turn to whether that error is prejudicial.

A trial court's failure to exercise its discretion in this context "constitutes prejudicial error when the requested testimony (1) is material to the determination of defendant's guilt or innocence; and (2) involves issues of some confusion or contradiction such that the jury would want to review this evidence to fully understand it." *Chapman*, 244 N.C. App. at 708, 781 S.E.2d at 327.

Both this Court and our Supreme Court have found that an error was "so prejudicial as to entitle defendant to a new trial" in sex offense cases where the jury requested "transcripts of the testimony of the victim and defendant," the victim's testimony was "the only evidence directly linking defendant to the alleged crimes," and the testimony of the victim and defendant was contradictory. *State v. Johnson*, 346 N.C. 119, 126, 484 S.E.2d 372, 377 (1997); *State v. Long*, 196 N.C. App. 22, 40–41, 674 S.E.2d 696, 707 (2009). In these particular circumstances, the victim's "credibility was the key to the case" and thus conflicting testimony concerning the victim's account "was material to the determination of defendant's guilt or innocence." *Johnson*, 346 N.C. at 126, 484 S.E.2d at 377.

Here, as in *Johnson* and *Long*, there was no physical evidence linking the defendant to the alleged offense and the State's case relied entirely on witness

testimony. *See Johnson*, 346 N.C. at 126, 484 S.E.2d at 377; *Long*, 196 N.C. App. at 23, 674 S.E.2d at 697. To be sure, there was testimony from another witness that, when he was a juvenile, Nova touched him inappropriately as well. But Nova testified that he never touched either juvenile inappropriately and that the allegations were "cooked up" by adults at the juveniles' church who were concerned after learning that Nova had a consensual homosexual relationship with an adult friend.

Because this case turned on the credibility of the defendant and the accusing witnesses, because the key trial testimony—that of Nova and of the alleged juvenile victim—was conflicting, and because the jury asked to review transcripts of that conflicting testimony, there is a reasonable possibility that the trial court's error affected the outcome of the jury's deliberations. *Johnson*, 346 N.C. at 126, 484 S.E.2d at 377; *Chapman*, 244 N.C. App. at 708, 781 S.E.2d at 327. We therefore vacate the trial court's judgment and remand the case for further proceedings. Because we vacate the judgment on this ground, we need not address Nova's remaining arguments, which may be mooted in a new trial. *See State v. Moore*, 362 N.C. 319, 328, 661 S.E.2d 722, 727 (2008).

## Conclusion

We vacate the trial court's judgment and remand for further proceedings.

VACATED AND REMANDED.

Judges DILLON and ARROWOOD concur.